IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NAZIRA MALIK,                          :
                                       :
                    Plaintiff,         :
                                       :
          v.                           :        C. A. No. 18-248-MPT
                                       :
NANCY A. BERRYHILL,                    :
ACTING COMMISSIONER OF                 :
SOCIAL SECURITY                        :
                                       :
                    Defendant          :

## MEMORANDUM

## I.      INTRODUCTION

          This action arises from the denial of plaintiff's claim for Social Security benefits.

On April 23, 2014, plaintiff filed a Title II application for Social Security Disability

Insurance Benefits ("DIB").[1]  In her applications, plaintiff alleged she became disabled

on October 11, 2013, due to back pain, connect tissue disease, elbow pain,

fibromyalgia, joint pain, leg pain, neck pain, and wrist pain.[2]  The claims were initially

denied on July 24, 2014, and upon reconsideration on October 9, 2014.[3]  Following

these denials, plaintiff requested a hearing before an Administrative Law Judge ("ALJ")

and the video hearing occurred on December 2, 2016.[4]  At the hearing, testimony was

provided by plaintiff and an impartial vocational expert, Wayne Berger.[5]  On January 31,

---

[1] D.I. 12 at 1.
[2] D.I. 8 at 185.
[3] *Id.* at 89, 98.
[4] *Id.* at 32.
[5] *Id.*

2017, the ALJ, Howard Prinsloo, issued a written decision denying plaintiff's claims.[6] Plaintiff requested a review of the ALJ's decision by the Social Security Appeals Council, which was denied on December 20, 2017.[7] On February 13, 2018, plaintiff filed a timely appeal with the court.[8] Presently before the court are the parties' cross-motions for summary judgment.[9] For the reasons that follow, the court will grant the defendant's motion.

## II.    BACKGROUND

Plaintiff was born on December 24, 1953.[10] She has an associate's degree and past relevant work as a court clerk and judicial case processor for twenty-seven years.[11] Her job responsibilities included inputting cases into the computer, processing old cases, and preparing subpoenas.[12] During a workday, plaintiff spent approximately seven hours sitting and three hours walking and standing.[13] The majority of her time involved writing, typing, handling small objects or reaching.[14] Her alleged disability dates from October 11, 2013.[15] In October 2013, plaintiff previously or was being treated for back pain, carpal tunnel syndrome, cervical radiculopathy, connective tissue disease, fibromyalgia, and lateral epicondylitis.[16] Since 2013, plaintiff was treated for carpal tunnel syndrome, connective tissue disease, degenerative disc disease,

---

[6] *Id.* at 8-24.
[7] *Id.* at 24.
[8] D.I. 2
[9] D.I. 11; D.I. 18.
[10] D.I. 8 at 277.
[11] *Id.* at 186.
[12] *Id.* at 187.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 185.
[16] *Id.* at 277-303, 626-31, 632-34, 637-39, 650-56, 799, 801-04, 895-931.

degenerative joint disease, depression, fibromyalgia, lateral epicondylitis, and pelvic muscle spasms.[17]  She lived in an apartment with her granddaughter.[18]  To qualify for disability benefits, plaintiff must demonstrate she is disabled within the meaning of § § 216(I), 223(d), and 1614(a)(3)(A) of the Social Security Act (the "Act").

## A. Evidence Presented

### 1. Musculoskletal impairments

#### a. Degenerative Disc Disease

In January 2014, Nancy Kim, M.D. began treating plaintiff for lower back, pelvic, and lower extremity pain that was not resolved with prior physical therapy.[19]  An MRI revealed progressive degenerative disc disease.[20]  Plaintiff underwent physical therapy for a few months and continued to follow up with Dr. Kim through September 2016.[21]  Treatment included nerve root blocks, aquatic physical therapy, medical branch blocks, radio-frequency ablations, epidural injections, and home exercises.[22]  Dr. Kim recommended she resume normal activities and avoid bed rest for any time greater than four days.[23]

Plaintiff returned to Dr. Kim in February 2015, for increased bilateral neck pain with radiation into the right shoulder and lower back pain.[24]  An MRI of plaintiff's spine

---

[17] *Id.* at 277, 280, 590, 656, 666, 673-74, 823-27, 964-66, 969-72, 1003-06, 1008-19, 1020-29, 1125-29, 1085.
[18] *Id.* at 198.
[19] *Id.* at 696-99.
[20] *Id.* at 673-74.
[21] *Id.* at 407-36, 484-568, 698-99.
[22] *Id.* at 753-54, 848-49, 858, 1063-72.
[23] *Id.* at 736.
[24] *Id.* at 1077.

revealed prior total disc replacement surgery and disc protrusions.[25]  Dr. Kim prescribed

oxycodone, aquatic therapy, home exercises, and epidural injections.[26]  Dr. Kim and

other practitioners at the Christiana Spine Center advised she should resume normal

activities and avoid bed rest for greater than four days.[27]  An MRI of plaintiff's shoulder

in 2016 for supraspinatus tendinosis revealed an underlying tear.[28]

### b.    Connective Tissue Disease and Fibromyalgia

From at least December 17, 2012 to March 26, 2014, Susan L. Cowdery, M.D. a

rheumatologist, treated plaintiff for connective tissue disease and fibromyalgia with

methotrexate and Lyrica.[29]  Dr. Cowdery found that plaintiff was intact neurologically,

had stable ranges of motion and degenerative joint disease, no objective signs of

synovitis or inflamation, and no substantial tender points.[30]  Dr. Cowdery recommended

symptomatic treatment because plaintiff's fibromyalgia had reached maximum medical

improvement with surgery, medications, and physical therapy.[31]  In October 2013, Dr.

Cowdery completed a Family and Medical Leave Act form for plaintiff wherein she listed

diagnoses of fibromyalgia, spondylosis, and connective tissue disease.[32]  She indicated

plaintiff would need short term to long term disability for fibromyalgia flare-ups, but

found plaintiff would not be prevented from performing job functions as a result of her

---

[25] *Id.* at 1085.
[26] *Id.* at 984-85, 1109-10, 1079, 1080, 1082.
[27] *Id.* at 1084, 1100, 1104, 1114.
[28] *Id.* at 1116.
[29] *Id.* at 590, 656.
[30] *Id.* at 616, 620, 867, 871.
[31] *Id.* at 867-68.
[32] *Id.* at 993-95.

conditions.[33]

In September 2015, plaintiff began treatment with Maryah Mansoor, M.B.B.S., a rheumatologist, for connective tissue disease and fibromyalgia.[34]  Dr. Mansoor prescribed plaquenil instead of methotrexate, physical therapy, and aquatic therapy.[35]  Dr. Mansoor's assessment in December 2015 revealed tenderness in all joints and puffiness in her second metacarpophalangeal ("MCP") joints bilaterally.[36]  As a result, Dr. Mansoor added advil, oxycodone, zoloft, pool therapy, and increased plaintiff's Lyrica dosage.[37]  In March 2016, Dr. Mansoor recommended plaintiff to see a psychologist for depression.[38]  During a visit in July 2016, Dr. Mansoor noted that plaintiff's psychiatrist switched the Lyrica to Gabapentin.[39]

### c.    Urogynecology

Dr. Babak Vakili, M.D., treated Plaintiff for urogynecologic issues and pelvic pain.[40]  Dr. Vakili identified that pelvic muscle spasms could be treated with back therapy, injections, and medicine, and if plaintiff's symptoms were caused by interstitial cystitis, or painful bladder syndrome, treatment would include Uribel, vaginal estrogen, and diet modification.[41]  Dr. Vakili's medical statement of plaintiff's ability to perform work-related activities dated November 4, 2016 noted no restrictions and that plaintiff

---

[33] *Id.*
[34] *Id.* at 964-66, 969-72, 1008-19.
[35] *Id.*
[36] *Id.* at 1011, 1013-15, 1018-19.
[37] *Id.* at 1011.
[38] *Id.* at 1014.
[39] *Id.* at 1016.
[40] *Id.* at 665-67.
[41] *Id.* at 666-67. Uribal was not taken due to the side effect of dry mouth. *Id.* at 785.

could work a full eight hour workday.[42]

### d. Carpal Tunnel Syndrome and Lateral Epicondylitis

Randeep S. Kahlon, M.D., an orthopedic surgeon, treated plaintiff for elbow and wrist pain from January 2013 to at least October 2016.[43]  His assessment in May 2013 revealed carpal tunnel syndrome in the right and left hands, for which Dr. Kahlon administered a lidocaine injection, in each hand.[44]  The injections eased pain for several months, but the symptoms returned.[45]  Dr. Kahlon and plaintiff decided that surgery was the best option for the left carpal tunnel; surgery was subsequently performed in February 2014.[46]  After the surgery, plaintiff was off work for eleven days and restricted to lifting no more than ten pounds occasionally.[47]  In March 2014, Dr. Kahlon noted plaintiff was off work on short term disability due to her fibromyalgia.[48]

Plaintiff saw Dr. Kahlon in July 2014, for bilateral hand and wrist pain.[49]  In October 2014, plaintiff returned to Dr. Kahlon because of an x-ray finding in her right hand which indicated a tear.[50]  Dr. Kahlon observed that there were no fractures, dislocations, or other bone abnormalities and administered another lidocaine injection.[51]  Plaintiff advised that the injection relieved pain for two months, and then returned.[52]

---

[42] *Id.* at 1130-31.
[43] *Id.* at 277-339, 823-27, 1020-29, 1125-29.
[44] *Id.* at 302.
[45] *Id.* at 304.
[46] *Id.* at 307.
[47] *Id.* at 309.
[48] *Id.* at 316.
[49] *Id.* at 823.
[50] *Id.* at 1021-23.
[51] *Id.* at 1021.
[52] *Id.*

Dr. Kahlon performed right elbow surgery in January 2015 for lateral epicondylitis.[53]  Plaintiff followed up with Dr. Kahlon thereafter complaining of tenderness.[54]  Dr. Kahlon prescribed Motrin and physical therapy, and restricted plaintiff to only lifting two pounds.[55]  In April 2015, plaintiff underwent a pisotriquetral injection in her right wrist for carpal tunnel symptoms.[56]  A year later in April 2016, she had another pisotriquetral injection in her right wrist due to reoccurring pain.[57]

### 2.    Mental Health

Marsha Cornibe, a licensed professional counselor, treated plaintiff for adjustment disorder with depressed mood from April 2016 to June 2016.[58]  Ms. Cornibe found plaintiff's affect appropriate and variable.[59]  They discussed how depression can be secondary to medical conditions.[60]  During the assessment, plaintiff denied any suicidal or homicidal thoughts.[61]  Ms. Cornibe also noted that plaintiff's depression is mainly problematic when she is irritable, but plaintiff functions adequately and does not completely shut down.[62]  Ms. Cornibe concluded that plaintiff was doing well without psychotropic medicine.[63]  Plaintiff learned breathing and meditation exercises to assist in treating her adjustment disorder with depressed mood.[64]

---

[53] *Id.* at 280.
[54] *Id.* at 277-339.
[55] *Id.* at  277-339, 823-27, 895-948, 1020-29, 1125-29.
[56] *Id.* at 1024.
[57] *Id.* at 1027.
[58] *Id.* at 1002-1006.
[59] *Id.* at 1004.
[60] *Id.* at 1005.
[61] *Id.* at 1004.
[62] *Id.*
[63] *Id.*
[64] *Id.* at 1005.

### 3.    Primary Physicians

Dr. Nicolas Biasotto, D.O. was plaintiff's primary care physician from 2009 to 2014 and treated her for various issues, such as, fibromyalgia and hand pain.[65]  A residual functional capacity examination dated June 5, 2015 noted Dr. Biasotto's diagnosis of fibromyalgia and connective tissue disease.[66]  Dr. Biasotto concluded that plaintiff could sit or stand for fifteen minutes each and would have to lie down and elevate legs for thirty to sixty minutes in an eight hour work day.[67]  He estimated that plaintiff could work for one hour a day and would be absent or unable to complete an eight hour work day ten days a month.[68]  Although noting off and on depression, he concluded emotional factors did not contribute to the severity of plaintiff's symptoms or functional capabilities.[69]

In 2015, Dr. Yezdani became plaintiff's primary physician and treated her for similar conditions including polyarthritis and fibromyalgia.[70]  A residual functional capacity examination dated June 1, 2018 included Dr. Yezdani's diagnosis of fibromyalgia and connective tissue disease.[71]  Dr. Yezdani found that plaintiff could sit or stand for fifteen minutes at a time and could remain at a workstation for a total thirty minutes in an eight hour workday.[72]

-----

[65] *Id.* at 672, 675, 679-80, 683, 686, 815.
[66] *Id.* at 963-64.
[67] *Id.*
[68] *Id.* at 962-63.
[69] *Id.* at 963.
[70] *Id.* at 1031-47.
[71] *Id.* at 999.
[72] *Id.*

### 4.    Consultative Examination

In July 2014, Dr. Irwin Lifrak, M.D. completed a physical consultative examination with plaintiff.[73]  Plaintiff's chief complaint was pain extending throughout the entire vertebral column and into the upper and lower extremities.[74]  During the examination, plaintiff stated that within a eight hour period she could sit and stand for three hours each with customary breaks.[75]  She also felt that she could lift weights of no more than two and a half pounds in each hand.[76]  During the physical examination, plaintiff was able to perform gait and dexterity maneuvers, such as picking up coins and paperclips.[77]  Dr. Lifrak concluded that plaintiff could sit and stand for six hours each within a eight hour work day with customary breaks and lift up to ten pounds in each hand.[78]

### B.    Hearing Testimony

### 1.    Plaintiff's Testimony

At the December 2, 2016 hearing, plaintiff testified about her background, work history, and her alleged disability.[79]  She is single, has two children, and lives with her seventeen year old granddaughter.[80]  She completed two years of college and received an associate degree.[81]  Plaintiff stated she worked as a court clerk for the State of Delaware, using a desk computer and telephone to mainly process paperwork.[82]  She

---

[73] *Id.* at 816-22.
[74] *Id.* at 818.
[75] *Id.* at 819.
[76] *Id.*
[77] *Id.* at 820.
[78] *Id.* at 821-22.
[79] *Id.* at 34.
[80] *Id.* at 37, 49.
[81] *Id.* at 37-38.
[82] *Id.* at 38.

estimated that she would lift case boxes weighing fifteen to twenty pounds.[83]  Plaintiff described how she stopped working due to pain which prevented her from sitting for an extended period of time without having to lay down and take a break.[84]  She further stated that at work she could not take too many breaks and could not lay down.[85]

Plaintiff described how her symptoms restricted her ability to work, including difficulty to complete work timely as she previously did.[86]  She could not type because her fingers swell and her joints hurt with shooting pains.[87]  Her pain medicine caused drowsiness.[88]  Although she enjoyed her job, it is very difficult completing tasks due to pain.[89]  Combining sick and vacation days, she had approximately thirty days off from her clerk job.[90]  Plaintiff identified that after her right elbow surgery in January 2013, she had difficulty situating her hands properly to type and pain in her shoulder, neck, ear, as well as severe earaches.[91]  She went on short term disability until it ran out in the end of March 2014.[92]  Before going on short term disability, plaintiff's doctor told her to stop working due to her joint pain and arthritis.[93]

Plaintiff described undergoing wrist surgery with Dr. Kahlon after she stopped working.[94]  She had reduced pain after she stopped working and typing, but had surgery

---

[83] *Id.* at 38-39.
[84] *Id.* at 39.
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.* at 48.
[89] *Id.* at 46.
[90] *Id.* at 47.
[91] *Id.* at 41-42.
[92] *Id.* at 53.
[93] *Id.* at 53-54.
[94] *Id.* at 43.

due to carpel tunnel syndrome.[95]  Plaintiff related that therapy did not help.[96]  She testified receiving several injections from Drs. Kim and Kahlon which provided temporary pain relief.[97]

Concerning her daily activities, plaintiff testified her granddaughter helps with household chores, such as vacuuming, cooking, washing dishes, and wiping the table.[98]  Although she drives, it is painful to keep her arms elevated on the steering wheel properly.[99]  Her granddaughter also assists with grocery shopping since plaintiff cannot lift items.[100]  Plaintiff stated that she lays down for seven out of eight hours between nine o'clock a.m. to five o'clock p.m.[101]  She further related problems holding items and drops her tea cup.[102]

### 2.      The Vocational Expert's Testimony

A Vocational Expert ("VE"), Wayne Berger, testified that plaintiff's work experience was classified as sedentary work (DOT 243.362-010).[103]  The ALJ and Gary Linarducci, plaintiff's attorney, posed several hypothetical scenarios to the VE.[104]  All were based on a hypothetical fifty-nine year old woman at time of onset, currently sixty-two, with an Associates degree and plaintiff's past work history.[105]

---

[95] *Id.*
[96] *Id.* at 39.
[97] *Id.* at 44-46.
[98] *Id.* at 49.
[99] *Id.* at 49-50.
[100] *Id.*
[101] *Id.* at 48-49.
[102] *Id.* at 43-44.
[103] *Id.* at 54-55.
[104] *Id.* at 34, 54-55.
[105] *Id.* at 55.

In the first hypothetical, the individual had a residual functional capacity for light work limited to no climbing ladders, ropes, or scaffolds, and only occasional balancing, stopping, kneeling, crouching, or crawling, and overhead reaching.[106]  The ALJ asked if such individual would have been able to perform past work; the VE responded that the hypothetical individual's past work could have been performed.[107]

The second hypothetical had the same limitations as the first, but with the additional restriction that the lifting limits would be for sedentary work.[108]  In response, the VE testified that the past work could still be performed.[109]

The third hypothetical had the same limitations as the first, but with the additional restriction of only occasional handling.[110]  The VE responded that past work could not be performed.[111]  The VE also identified that, given those restrictions, there are not transferrable skills to another lower skilled sedentary job and the restriction precludes employment.[112]

The fourth hypothetical posed by Mr. Linarducci limited the individual to frequent handling, reaching, and fingering.[113]  In response the VE stated that the past work could not be performed.[114]

### 3.    The ALJ's Findings

---

[106] *Id.*
[107] *Id.*
[108] *Id.* at 56.
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.*
[113] *Id.* at 57.
[114] *Id.*

Based on the medical evidence and testimony, the ALJ determined plaintiff was not disabled and, therefore, ineligible for Social Security Disability Insurance and Supplemental Security Income.[115]  The ALJ's findings are summarized as follows:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.   The claimant has not engaged in substantial gainful activity since October 11, 2103, the alleged onset date (22 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments:  degenerative disc disease, degenerative joint disease, carpal tunnel syndrome, fibromyalgia, and connective tissue disease (20 CFR 404.1520©).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations:  the claimant is limited to only occasional balancing, stooping, kneeling, crouching, or crawling.  Additionally, she is limited to work that does not involve climbing of ladders, ropes, or scaffolds as well as work that involves only occasional overhead reaching.

6.   The claimant is capable of performing past relevant work as a court clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.   The Claimant has not been under a disability, as defined in the Social Security Act, from October 11, 2013 through the date of this decision (20 CFR 404.1520(f)).

---

[115] *Id.* at 8-31.

III.     **STANDARD OF REVIEW**

A.     **Motion for Summary Judgment**

Both parties move for summary judgment.  In determining the appropriateness of

summary judgment, the court must "review the record as a whole, 'draw[ing] all

reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing

the evidence or making credibility determinations."[116] If "there is no genuine issue as to

any material fact" and the movant is entitled to judgment as a matter of law, summary

judgment is appropriate.[117] This standard does not change merely because there are

cross-motions for summary judgment.[118]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to
> summary judgment, and the making of such inherently
> contradictory claims does not constitute an agreement that if one is
> rejected the other is necessarily justified or that the losing party
> waives judicial consideration and determination whether genuine
> issues of material fact exist.[119]

"The filing of cross-motions for summary judgment does not require the court to grant

summary judgment for either party."[120]

B.     **Review of the ALJ's Findings**

Section 405(g) sets forth the standard of review of an ALJ's decision.  The court

may reverse the Commissioner's final determination only if the ALJ did not apply the

---

[116] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted).
[117] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).
[118] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[119] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[120] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).

proper legal standards, or the record did not contain substantial evidence to support the decision. Factual findings are upheld if supported by substantial evidence.[121] Substantial evidence means less than a preponderance, but more than a mere scintilla of evidence.[122]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[123]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a *de novo* review of the decision nor re-weigh the evidence of record.[124]  The court's review is limited to the evidence that was actually presented to the ALJ.[125]  The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[126]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[127]  Even if the court would have decided the case differently, it must defer to and affirm the ALJ so long as the decision is supported by substantial evidence.[128]

―――――――――――――――

[121] *See* 42 U.S.C. §§405(g); *see also Monsour Med. Ctr. v. Heckle*, 806 F.2d 1185, 1190 (3d Cir. 1986).
[122] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).
[123] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[124] *Monsour*, 806 F.2d at 1190.
[125] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).
[126] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[127] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[128] *Monsour*, 806 F.2d at 1190-91.

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[129]  In *SEC v. Chenery Corp.*, the Court found that a "reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."[130]  "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."[131]  The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[132]  This court's review is limited to the four corners of the ALJ's decision.[133]  In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to FED. R. CIV. P. 56.[134]

## IV.    DISCUSSION

### A.    Parties' Contention

In her appeal, plaintiff contends the ALJ failed to conduct a "full and fair inquiry" of all relevant facts regarding her mental impairments.[135]  Plaintiff further argues the ALJ improperly afforded great weight to the non-examining physicians opinions, while affording little weight to the opinions of her treating physicians (Drs. Cowdery, Biasotto,

---

[129] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[130] 332 U.S. 194, 196 (1947).
[131] *Id.*
[132] *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).
[133] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).
[134] *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).
[135] D.I. 12 at 4-5.

and Yezdani).[136]

The Commissioner counters: substantial evidence supports the ALJ's assessment regarding the plaintiff's mental health, and the ALJ afforded proper weight to the medical evidence of record.[137]

**B.     Disability Analysis**

Title II of the Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."[138]  To qualify for DIB, a claimant must establish disability prior to the date she was last insured.[139]  A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death or has lasted or can be expected to last for a continuous period of at least 12 months.[140]  To be disabled, the severity of the impairment must prevent return to previous work, and based on age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[141]

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[142]  If a finding of disability or non-disability can

---

[136] *Id.* at 9-15.
[137] D.I. 19 at 14, 20.
[138] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
[139] *See* 20 C.F.R. § 404.131.
[140] 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).
[141] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).
[142] 20 C.F.R § 404.1520; see also *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).

be made at any point in the sequential process, the review ends.[143]   At the first step, the

Commissioner must determine whether the claimant is engaged in any substantial

gainful activity, and if so, a finding of non-disabled is required.[144]   If the claimant is not

so engaged, step two requires the Commissioner to determine whether the claimant is

suffering from an impairment or a combination of impairments that is severe.  If no

severe impairment or a combination thereof exists, a finding of non-disabled is

required.[145]

   If the claimant's impairments are severe, the Commissioner, at step three,

compares them to a list of impairments ("the listings") that are presumed severe enough

to preclude any gainful work.[146]   When a claimant's impairment or its equivalent

matches an impairment in the listing, the claimant is presumed disabled.[147]   If a

claimant's impairment, either singularly or in combination, fails to meet or medically

equal any listing, the analysis continues to steps four and five.[148]   At step four, the

Commissioner determines whether the claimant retains the RFC to perform her past

relevant work.[149]   A claimant's RFC is "that which an individual is still able to do despite

limitations caused by [her] impairment(s)."[150]   "The claimant bears the burden of

demonstrating an inability to return to [her] past relevant work."[151]

_____

[143] 20 C.F.R. § 404.1520(a)(4).
[144] 20 C.F.R. § 404.1520(a)(4)(I).
[145] 20 C.F.R. § 404.1520(a)(4)(ii).
[146] 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F. 3d at 428.
[147] 20 C.F.R. § 404.1520(a)(4)(iii).
[148] 20 C.F.R. § 404.1520(e).
[149] 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.
[150] *Fargnoli*, 247 F.3d at 40.
[151] *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude adjusting to any other available work.[152] At this final step, the burden is on the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[153] In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments and often seeks the assistance of a vocational expert.[154]

### 1. Full and Fair Inquiry of Mental Impairments

Plaintiff argues the ALJ did not properly consider plaintiff's mental impairments when making a determination.[155] Her contention is that proper procedure was not followed because a qualified psychiatrist or psychologist was not consulted when the ALJ reviewed plaintiff's matter.[156] Plaintiff refers to requirements in 20 C.F.R. § 404.1520a and 42 U.S.C. § 421(h), and also notes that "agency policy is that it must make 'every reasonable effort' to have a qualified psychiatrist or psychologist review the record".[157]

20 C.F.R. § 404.1520a sets forth the process of evaluating mental impairments referred to as a special technique.[158] The statute provided the special technique helps

---

[152] 20 C.F.R. § 404.1520(g); *Plummer*, 186 F.3d at 427-28.
[153] *Plummer*, 186 F.3d at 427-28.
[154] *Id.*
[155] D.I. 20 at 1.
[156] D.I. 12 at 2-3.
[157] D.I. 20 at 2.
[158] 20 C.F.R. § 404.1520a.

the ALJ to "identify the need for additional evidence to determine impairment severity."[159]  The special technique requires the ALJ to first determine whether a plaintiff has a medically determinable impairment, then rate the degree of the functional limitation resulting from the impairment and record the findings.[160]

Plaintiff argues that Agency policy of 20 C.F.R. § 404.1520a unambiguously requires that a qualified psychiatrist or psychologist must review the evidence and determine whether the mental impairment is severe, is an impairment at step three, and is a work-related mental limitation.[161]  Plaintiff contends the ALJ improperly relied on his lay opinion instead of enlisting an expert to make the determination.[162]  There is, however, no explicit language within 20 C.F.R. § 404.1520a that requires a qualified psychiatrist or psychologist to make the determination. Rather, the statutory language provides that one purpose of the special technique is to identify when additional evidence is needed.[163]  Furthermore,  20 C.F.R. § 404.1520a(e)(5) lists the procedures for "if the administrative law judge requires the services of a medical expert to assist in applying the technique," indicating that a medical expert is not automatically required.[164]

Plaintiff also relies on section 421(h) of the Social Security Act, which states

> [r]equirement for medical review . . . .  An initial
> determination under subsection (a), (c), (g), or (I) shall not
> be made until the Commissioner of Social Security has

---

[159] 20 C.F.R. § 404.1520a(a).
[160]  20 C.F.R. § 404.1520a(b).
[161] D.I. 12 at 3.
[162] *Id.*
[163] 20 C.F.R. § 404.1520a(a).
[164] 20 C.F.R. § 404.1520a(e)(5).

> made every reasonable effort to ensure (1) in any case
> where there is evidence which indicates the existence of
> mental impairment, that a qualified psychiatrist or
> psychologist has completed the medical portion of the case
> review and any applicable residual functional capacity
> assessment.[165]

Plaintiff's claim, however, is against the ALJ determination regarding mental illness, not the State Agency's review.[166]  Plaintiff conceded that it might not have been reasonable for the State Agency to examine Plaintiff's mental impairments at the time of its review.[167]  The Third Circuit has explained that section 421(h) does not apply to decisions made by an ALJ.[168]  Therefore, a review by a qualified psychiatrist or psychologist was not required for the ALJ to determine that plaintiff was not impaired by her non-severe depression.

The ALJ utilized  20 C.F.R. § 404.1520a in the analysis and found that plaintiff had a medically determinable mental impairment of depression that was not severe.[169] In reaching this conclusion, the ALJ applied the four broad functional areas set out in disability regulations for evaluating mental disorders identified in  20 C.F.R. § 404.1520a(a)(3) to determine that plaintiff had a mild limitation with regard to understanding, remembering, or applying information and no limitation in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing

---

[165] 42 U.S.C. § 421(h).

[166]  D.I. 12 at 6, n.4.

[167] *Id.*

[168] *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999).  "Because 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment. Instead, the Commissioner's regulations provide an ALJ with greater flexibility than other hearing officers." *Id.*

[169] D.I. 8 at 13-14.

oneself.[170]  The ALJ arrived at this conclusion by analyzing reports and representations by plaintiff regarding her daily function.[171]  The record indicates that plaintiff's depression would "come and go," with examinations showing no mood changes, depression, nervousness, or anxiety.[172]  Furthermore, the ALJ acknowledged that plaintiff received mental health counseling from Ms. Cornibe between April and June 2016.[173]  The record supports the ALJ's reasonable determination that plaintiff's mental illness was not severe.  During treatment with Ms. Cornibe, the record notes that when plaintiff's depression was at its worse, she could function adequately and does not completely shut down.[174]  Therefore, the ALJ applied the proper legal standard in analyzing plaintiff's mental impairment consistent with the requirements of  20 C.F.R. § 404.1520a and the record contained substantial evidence to support that plaintiff's depression was non-severe .

### 2.    Weight Accorded to Opinion Evidence

Plaintiff asserts the ALJ erred by affording "little weight" to the opinions of Drs. Cowdery, Biasotto, and Yezdani, while giving substantial weight to the opinions of nonexamining medical consultants.[175]  A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when the opinions reflect expert judgment based on a continuing observation

---

[170] *Id.*
[171] *Id.*
[172] *Id.* at 312, 316, 466, 469, 615, 619, 623, 698,  796, 825, 858, 869, 874, 1009, 1012, 1017, 1061, 1075, 1079, 1083, 1088, 1095, 1098, 1107, 1112, 1113, 1117, 1118.
[173] *Id.* at 13-14.
[174] *Id.* at 1004.
[175] *Id.* at 9-15.

of the patient's condition over a prolonged period of time."[176]  Such reports will be
afforded controlling weight where a treating source's opinion on the nature and severity
of a claimant's impairment is well supported by medically acceptable clinical and
laboratory diagnostic techniques, and is not inconsistent with the other substantial
evidence on record.[177]

The ALJ must consider medical findings supporting the treating physician's
opinion that the claimant is disabled.[178]  It is error, however, to apply controlling weight
to an opinion merely because it comes from a treating source if it is not well-supported
by the medical evidence, or inconsistent with other substantial evidence, medical or lay,
in the record.[179]   If the ALJ rejects the treating physician's assessment, he may not
make "speculative inferences from medical reports," and may reject "a treating
physician's opinion outright only on the basis of contradictory medical evidence."[180]
Further, medical testimony from a doctor who has never examined the claimant should
not be given credit if it contradicts the testimony of the claimant's treating physician.[181]
If the ALJ does not give a physician's report controlling weight, he must examine
multiple factors.[182]   These factors include the "[e]xamining relationship," the "[t]reatment
relationship" which considers the "[l]ength of the treatment relationship and the
frequency of examination," the "[n]ature and extent of the treatment relationship," the

---

[176] *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000).
[177] *Fargnoli*, 247 F.3d at 43.
[178] *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429).
[179] SSR 96-2p, 1996 WL 374188 at *2.
[180] *Plummer*, 186 F.3d at 429.
[181] *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986).
[182] 20 C.F.R. §404.1527(c).

degree and extent the relevant evidence supports a treating physician's opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating physician in relation to the medical issues involved.[183]   An ALJ must weigh all the evidence in the record.[184]   Failure of an ALJ to examine and elaborate on these factors is grounds for remand.[185]

### a.    Dr. Cowdery

The ALJ assigned little weight to the opinions of Dr. Cowdery due to inconsistencies in the record, her failure to indicate the frequency claimant suffered from fibromyalgia flares that would result in absences, and her failure to provide record of previous flare-ups.[186]   Dr. Cowdery opined plaintiff would be absent from work on a short term disability basis, and possibly for the long term during fibromyalgia flare-ups, but that plaintiff was capable of performing work duties.[187]   First, the ALJ distinguished that the question of whether plaintiff was disabled or unable to work as an issue for the Commissioner under 20 CFR 404.1527 and SSR 96-5p.[188]   Second, the ALJ identified that Dr. Cowdery's restrictions were temporary in nature, and as a result, do not provide a proper analysis for the entire period of the disability.[189]   Third, the ALJ noted the absence of any indication regarding frequency of flare-ups and the number of

---

[183] *Id.*
[184] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).
[185] *Solomon v. Colvin*, C.A. No. 12-1406-RGA-MPT, 2013 WL 5720302, at *12 (D.Del. Oct. 22, 2013).
[186] D.I. 8 at 21.
[187] *Id.*
[188] *Id.*
[189] *Id.*

absences.[190]  In light of the insufficient information and evidence in this regard, the ALJ reasonably concluded that Dr. Cowdery's opinion should be given little weight.

### b    Dr. Biasotto and Dr. Yezdani

The ALJ assigned little weight to the opinions of Drs. Biasotto and Yezdani because their characterizations of plaintiff's limitations were inconsistent with her medical record and work history.[191]  The ALJ identified that the restrictions were based on subjective complaints rather than objective testing.[192]  The ALJ referenced specific inconsistencies, including a report that plaintiff could only lift two and a half pounds with each arm, while a consultative examination and testing identified her as able to lift up to ten pounds.[193] The limitations listed by Drs. Biasotto and Yezdani concerning ability to only stand and/or walk fifteen minutes total, sit thirty minutes in an eight hour work day, and only be able to work one hour per day, despite having a job that did not require lifting more than five pounds, were not supported by her medical history.[194]  Another inconsistency identified by the ALJ was that plaintiff as unable to return to previous work when she had remained employed for a number of years with certain of the same impairments.[195] The ALJ also gave less weight to the assessments of Drs. Biasotto and Yezdani because they were primary physicians, not specialized physicians in rheumatology or orthopedics.[196]  While plaintiff had been treated by Dr. Biasotto from 2009 to 2014 and

---

[190] *Id.*
[191] *Id.* at 22.
[192] *Id.*
[193] *Id.*
[194] *Id.* at 21-22.
[195] *Id.* at 22.
[196] *Id.*

Dr. Yezdani starting in 2015, there is not an extensive medical record.[197]  Therefore, the ALJ's reasoning for assigning Dr. Biasotto and Dr. Yezdani's opinions little weight is supported by substantial evidence.

## V.    CONCLUSION

Therefore, Plaintiff's motion for summary judgment (D.I. 11) is denied; and Defendant's motion for summary judgment (D.I. 18) is granted. An order consistent with the findings in this memorandum shall follow.


Dated: December 10, 2018              /s/ Mary Pat Thynge_____
                                      Chief U.S. Magistrate Judge

---

[197] *Id.* at 22, 672, 675, 679-80, 683, 686, 815, 1031-47.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NAZIRA MALIK,                     )
                                  )
    Plaintiff,               )
                                  )
    v.                       )   C. A. No. 18-248-MPT
                                  )
NANCY A. BERRYHILL,               )
ACTING COMMISSIONER OF            )
SOCIAL SECURITY,                  )
                                  )
    Defendant                )

## <u>ORDER</u>

Consistent with the findings and conclusion made in the Memorandum issued on the same date, IT IS ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgement (D.I. 11) is DENIED; and Defendant's Motion for Summary Judgment (D.I. 18) is GRANTED.


Date:  December 10, 2018      /s/ Mary Pat Thynge
                                     Chief U.S. Magistrate Judge